IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

HOPE RISING COMMUNITY CHURCH,
a Pennsylvania nonprofit corporation,

      Plaintiff,                             Civil Action No. 2:24-cv-1504

v.

BOROUGH OF CLARION,
a Pennsylvania municipal corporation,

      Defendant.

## Verified Complaint

Plaintiff, Hope Rising Community Church, by and through its attorneys, and for its Complaint against Defendant, Borough of Clarion, states as follows:

### Introduction

The Borough of Clarion allows Civic and Cultural buildings, Governmental Offices, Theatres, and other secular assembly places in its C-2 Zoning District. However, It does not provide any zoning space for people of faith to assemble, worship, and pray. Hope Rising Community Church now seeks equitable relief as federal and state statutory and constitutional law expressly provide for it to worship freely within the Borough of Clarion, Pennsylvania.

### Parties

1. Plaintiff, Hope Rising Community Church (the "Church" or "Hope Rising"), located in Clarion, Pennsylvania, is a Church incorporated as a non-profit under the laws of the state of Pennsylvania and has secured tax-exempt status from the Internal Revenue Service according to IRS Code Section 501(c)(3).

2. Defendant Borough of Clarion is a Pennsylvania Municipal Corporation in Clarion County, Pennsylvania.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this case according to 28 USC § 1331, as this action arises under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc ("RLUIPA"), and the First and Fourteenth Amendment to the United States Constitution; under 28 USC § 1343(a)(3), in that it is brought to redress constitutional violations and deprivations of law under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 42 USC § 1983, which provides causes of actions for the protection of civil and constitutional rights.

4. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania state law claim asserted herein as that claim forms part of the same case or controversy as the federal questions asserted herein, according to 28 USC § 1367(a).

5. The venue in this action is proper within the United States District Court, Western District of Pennsylvania according to 28 USC § 1391(b), in that

   a. The plaintiff has a property interest within this judicial district;
   b. The defendant is situated within this judicial district; and,
   c. All of the claims asserted by Plaintiff arose within this judicial district.

6. Hope Rising respectfully requests a speedy decision and advancement on this Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.

## Plaintiff's Ministry

7. Plaintiff Hope Rising Community Church is a Church, organized by Pastor Harry Hoff on June 10, 2013, whose members assemble and worship together under the Christian

tradition. Hope Risisng is incorporated as a non-profit organization under Pennsylvania law and has secured tax-exempt status from the Internal Revenue Service under section 501 (C)(3).

8. The Church exists to "Reach the Lost and Strengthen the Saved through Jesus Christ" and as a core principle, has its members meet and assemble regularly for weekly religious services.

9. As part of its religious exercise and mission, the Church conducts various outreach programs in the community including:

   a. A "Hope Filled Christmas," during which the Church distributed toys to over 1,000 children in the Clarion, PA area;

   b. "30 Days of Hope," during which the Church members perform various community service projects, including home cleaning for the elderly;

   c. Distributing water, coffee, and donuts to municipal employees, schools, and members of the community;

   d. "240" College & Young Adults ministry, focused on mentoring, counseling/coaching, life training, and biblical training for college students and young adults. Hope Rising provides weekly meals for college students and young adults. Hope Rising also offers opportunities for community outreach for college students and young adults to be involved in

   e. Hope Rising Internship, an internship focused on building the next generation of leaders. The internship also equips and trains people for ministry positions.

   f. Refuge Youth, focused on mentoring, counseling/coaching, life training, biblical training, and community outreach for teenagers.

g. Raise up recovery, a drug and alcohol recovery program which helps attics find freedom in their life with weekly meetings and mentoring.

h. Liberty Senior Care, provides regular Bible studies for the seniors in our region; visits seniors without families in senior homes; and provides regular meals and holiday meals for senior citizens. There is also special programming put on such as beauty days for our senior citizens which includes having a team of people go in and do their hair nails.

i. Disaster relief, whether it is COVID-19 or a hurricane that destroys North Carolina a team of congregation members are the first in to respond when tragedy happens. This work includes passing out thousands of boxes of food to the people in our region and sending a team for Hurricane disaster cleanup.

j. Hope Rising partners with our local school district providing a safe place for the children of our school to be in case of an emergency. Hope Rising partners with our school district sports to give them a place to meet weekly to watch game films as well as feed them a meal.

k. Hope Rising puts on free community events during Christmas, Easter, and other times throughout the year to encourage families to come together without the financial burden.

l. Partnering with KFA and local agencies to help find placement for foster children. The Church also provides resources to foster families and their children who bring in a new foster child.

m. Night to shine, a program which hosts a prom for our special needs community where hundreds attend.

10. An essential component of the Church's religious exercise is gathering together for weekly worship services as one body of believers.

11. Hope Rising presently meets at 240 Liberty Street, Clarion, Pennsylvania, but its congregation, of roughly six hundred (600), has outgrown its current space.

## The Clarion Borough Zoning Ordinance

12. The Borough of Clarion has adopted a zoning ordinance, the Clarion Borough Zoning Ordinance ("the Ordinance"), and zoning map in Chapter 210 of the Code of the Borough of Clarion.

13. The zoning map established the boundaries of the C-2 district, which is primarily the main street of Clarion. **Exhibit 1**, Zoning Map.

14. Chapter 210-18(A) of the Ordinance states the purpose of the C-2 Commercial District "is to accommodate retail and service uses where sufficient infrastructure exists and which is suitable for both pedestrian and vehicular traffic." **Exhibit 2**, Clarion Zoning Ordinance.

15. The C-2 Table of Uses freely allows secular assembly uses for "Art studio," "Civic/cultural buildings," "Corporate offices," "Government offices," "Public utilities," and "Theaters" as "permitted uses" in the C-2 district. **Exhibit 2**, p. 2.

16. However, the C-2 Table of Uses expressly excludes "churches," "houses of worship," or "religious gathering space" as a permitted or conditional use in the C-2 district. **Exhibit 2**, p. 2.

17. Nonetheless, four churches were established in the C-2 district prior to the adoption of zoning in Clarion: First Presbyterian Church, located at 700 Wood St, Clarion, PA 16214; Immaculate Conception Church, located at 720 Liberty St, Clarion, PA 16214; First Baptist

5

Church of Clarion, located at 649 Main St, Clarion, PA 16214; and Grace Lutheran Church, located at 417 Madison Rd, Clarion, PA 16214.

### The Search for Property and Clarion's Decision to Block Hope Rising

18. The property at issue is located at 1141 East Main Street in Clarion. It was most recently used as a well-established automotive dealership in Clarion for many years. The property is on 2.57 acres of land, with over 18,000 square feet of space offering large-scale road frontage, high visibility, substantial parking, and a building design that can be easily converted to a church.



19. The property is located in the C-2 district.

20. On or about August 20, 2024, Hope Rising entered a purchase agreement to buy the abovementioned property.

21. On the same day, Borough Zoning Officer Scott Sharrar called the Hope Rising Church office and told the receptionist that Hope Rising would not be permitted to use the property as a church use nor to seek zoning approval through a variance.

22. Pastor Hoff then met with Scott Sharrar, the Zoning Officer, on August 22, 2024, and provided him with a binder full of information concerning RLUIPA and its application to the property. Mr. Sharrar told Pastor Hoff that he would review it and get back to him.

23. After waiting several weeks without following from the Borough, Pastor Hoff returned on September 11, 2024, to meet with Mr. Sharrar and asked if he could file a zoning appeal. During this meeting, Mr. Sharrar told Pastor Hoff that a zoning appeal could be filed but would be rejected and that he did not want the Church to waste its money. After giving Pastor Hoff the zoning variance application, Mr. Sharrar again told him that a variance would be denied as the Borough did not want any more churches in the town due to the loss of property taxes.

24. On September 23, 2024, Pastor Hoff returned to the Borough to obtain a zoning variance application from the Borough Zoning Administrator to apply for a use variance. While speaking with the Zoning Administrator, the City Manager, Ms. Carol Lapinto, joined the meeting and told Pastor Hoff that the Borough would not allow any new churches in town due to the loss of property taxes, and said, "I hope you find a building outside the Borough, because we don't need any more Churches."

25. On October 3, 2024, Pastor Hoff turned in the use variance application on behalf of Hope Rising Church to use the property located at 1141 East Main Street in the Borough of Clarion for religious assembly. **Exhibit 3**, Zoning variance application.

26. On October 7, 2024, the Zoning Administrator returned the variance application stating that it was not completed correctly, as Pastor Hoff noted on the application a dot instead of a checkmark in responding to a question. **Exhibit 4**, application denied.

27. Applying for a zoning variance will be futile as the Borough Zoning Administrator and Manager have both told Pastor Hoff that the Borough would never allow a church at 1141

East Main Street, and Clarion rejected as incomplete a variance application where the applicant used a dot instead of a checkmark on the application.

28. The closing of this property is set for November 22, 2024. If the zoning approval is not secured by that date, the Church cannot close on the property.

29. There is no known land is available for Hope Rising to build or use in Clarion other than the property at 1141 Main Street.

30. Currently, the Church is prohibited from holding worship services at the Property.

31. The current use of facilities inadequate to accommodate a meeting of the entire Church body violates the Church's religious beliefs.

## COUNT I
### Violation of the Religious Land Use and Institutionalized Persons Act
### Equal Terms Claim 42 U.S.C. § 2000cc(b)(1)
### Facial Challenge

32. Plaintiff restates the allegations in paragraphs 1 through 31 as if fully restated herein.

33. To state a facial claim under RLUIPA's Equal Terms provision, a church must show (1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007).

34. Congress directed that RLUIPA should be, "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

35. Plaintiff is indeed a religious assembly or institution.

36. Since the Ordinance is a land use regulation, the Plaintiff is subject to it.

37. The Ordinance as a whole treats religious assemblies and institutions on less than equal terms with nonreligious assemblies and institutions since churches and other religious assemblies are banned in C-2 district, whereas nonreligious assemblies, such as for "Art studio," "Civic/cultural buildings," "Corporate offices," "Government offices," "Public utilities," and "Theaters" as "permitted uses" are permitted n the C-2 district. **Exhibit 2,** p. 2.

38. The permitted nonreligious assemblies do not cause less harm to the interests of the Ordinance than religious assemblies or institutions.

39. More specifically, the Church seeks to locate within the C-2 district in Clarion and purchase Property there.

40. The Ordinance permits nonreligious assemblies and institutions as of right in the C-2 district. **Exhibit 2.**

41. The Ordinance treats religious assemblies, such as the Church, on less than equal terms with nonreligious assemblies by banning religious assemblies in the C-2 district. **Exhibit 2.**

42. Nonreligious assemblies and institutions such as "Art Studio," "Civic/cultural buildings," "Corporate Offices," "Government Offices," "Public Utilities," and "Theaters" do not cause less harm to the interests the Zoning Ordinance seeks to seek to advance in the C-2 district than religious assemblies or institutions.

43. Therefore, the Ordinance violates RLUIPA's Equal Terms provision in the zoning districts which permit nonreligious assemblies but ban religious assemblies or require religious assemblies to obtain special dispensation from Clarion.

44. The Ordinance violates RLUIPA's Equal Terms provision, specifically in Section 210-18, since the C-2 district treats religious assemblies and institutions on less than equal terms

with nonreligious assemblies and institutions that cause no lesser harm to the interests the regulation seeks to advance.

45. Plaintiff is suffering irreparable harm for which there is no adequate remedy at law and as a direct result of the Defendants' violations of Plaintiff's rights under 42 USC § 2000cc(b)(1) of the Act, as alleged above, Plaintiff has suffered and is entitled equitable relief.

## COUNT II
### Violation of the Religious Land Use and Institutionalized Persons Act
### Substantial Burden Claim 42 U.S.C. § 2000cc(a)
### Facial and As-Applied Challenge

46. Plaintiff restates the allegations in paragraphs 1 through 46 as if fully restated herein.

47. Congress provided in Section 2(a)(1) of RLUIPA statutory protections for "religious exercise" as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution * * * is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that compelling government interest. 42 U.S.C. 2000cc(a)(1).

48. While Congress did not define the term "substantial burden" in the Act, Congress included a definition for "religious exercise" which broadly includes:

> any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. 2000cc-5(7).

49. Congress further directed that RLUIPA should be, "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

50. The "substantial burden" provision of RLUIPA applies when (1) the burden is imposed in a program that receives federal financial assistance; (2) the imposition or removal of

the burden affects interstate commerce; or (3) the burden is imposed in a system in which a government makes individualized assessments about how to apply a land use regulation. 42 U.S.C. 2000cc(a)(2)(A), (B), and (C).

51. A "substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other [similarly situated persons] versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp.*, No. CIV.A. 05-6389, 2012 WL 645986, at *13 (E.D. Pa. Feb. 29, 2012).

52. Clarion has put substantial pressure on the Church to modify its behavior and violate its beliefs by:

   a. Precluding the entire Church family from worshipping together, in violation of the Church's sincerely held religious beleifs;
   b. Banning the Church from using the Property for religious assembly;
   c. Banning churches from all available properties in Clarion and excluding properties in the C-2 district based on the loss of tax revenue.

53. Through its actions as described in paragraph 52 and throughout, Clarion has made it practically impossible for the Church to legally carry out its religious mandate in Clarion.

54. The Church now faces the choice of violating Clarion law or violating its own beliefs.

55. Clarion's actions, as described in paragraph 53 and throughout, are not the least restrictive means of furthering any compelling government interest.

56. Therefore, Clarion has violated RLUIPA's Substantial Burden provision.

57. The Defendant's actions have directly resulted in the Church suffering irreparable harm for which there is no adequate remedy at law.

58. Furthermore, as a direct result of Defendant's violations of Plaintiff's rights under RLUIPA's Substantial Burden provision as alleged above, Plaintiff has suffered and is entitled to equitable relief.

### COUNT III
### Violation of the Religious Land Use and Institutionalized Persons Act
### Unreasonable Limitations Claim 42 U.S.C. § 2000cc(b)(3)(b)
### Facial Challenge

59. Plaintiff restates the allegations in paragraphs 1 through 58 as if fully restated herein.

60. Congress provided in Section 3(b)(3) of RLUIPA statutory protections for "unreasonable limitations" as follows:

> No government shall impose or implement a land use regulation that . . . Unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

61. Congress directed that RLUIPA should be, "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).

62. The purpose of the Unreasonable limitations provision "is not to examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate." *Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 387 (E.D. Pa. 2010). This inquiry considers "all of the facts, including the actual availability of land and the economics of religious organizations." *Id.* (quoting *Vision Church v. Village of Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006).

63. The functioning of the Ordinance makes clear it was adopted to prevent new religious assemblies and institutions from locating in Clarion.

64. Clarion does not allow any religious assembly uses in the C-2 district as of right, an area of town that has land available for religious assembly.

65. Given the restriction in the Ordinance to not allow religious assembly as of right in the C-2 district, the Ordinance violates, on its face, RLUIPA's unreasonable limitations provision. 42 U.S.C. 2000cc (b)(3)(b).

66. Given the restriction in the Ordinance to not allowing religious assembly as of right in the C-2 district, and the lack of property available in Clarion for religious assembly, Hope Rising has established that the Ordinance violates, as applied, RLUIPA's unreasonable limitations provision. 42 U.S.C. 2000cc (b)(3)(b).

67. The Defendant's actions have directly resulted in the Church suffering irreparable harm for which there is no adequate remedy at law.

68. Furthermore, as a direct result of Defendant's violations of Plaintiff's rights under RLUIPA's Unreasonable Limitations provision as alleged above, Plaintiff has suffered and is entitled to recover equitable relief.

### COUNT IV
### Violation of the Religious Land Use and Institutionalized Persons Act, Nondiscrimination Provision (Facial Claim), 42 U.S.C. § 2000cc(b)(2)

69. Plaintiff restates the allegations in paragraphs 1 through 69 as if fully restated herein.

70. RLUIPA's Nondiscrimination provision states "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2).

71. "Plaintiffs may establish discrimination by showing (1) a facially discriminatory policy; (2) a facially neutral policy enforced in a discriminatory manner; or (3) a facially neutral policy purposefully designed to favor some and/or burden others." *Minhal Academy of Turnersville, Inc. v. Twp. of Washington*, No. 1:20-cv-01120-JHR, 2021 WL 3758073, at *5 (D.N.J. Aug. 25, 2021).

72. Here the Ordinance is purposefully designed to favor some churches and burden others. It gives all churches existing at the time of its adoption preexisting, nonconforming use status. Whereas any new church is strictly curtailed in where they can locate, specifically in districts without readily available properties.

73. The effect of the Ordinance is to place significant burdens on any new church in Clarion, while insulating the existing churches from new congregations entering the community.

74. Since the Ordinance is purposefully designed to favor some churches and burden others, the Ordinance on its face violates 42 U.S.C. § 2000cc(b)(2).

75. As a direct result of Clarion's violation of 42 U.S.C. § 2000cc(b)(2), as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

76. The Church therefore respectfully requests the relief identified below.

### COUNT V
### Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution – 42 U.S.C. 1983
### Facial Challenge

77. Plaintiff restates the allegations in paragraphs 1 through 78 as if fully restated herein.

78. At all relevant times, Defendant acted under the color of state law.

79. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV

80. The Ordinance allows many secular uses in the C-2 district as of right that are similarly situated to churches and other religious organizations including ,but not limited to, "Art studio," "Civic/cultural buildings," "Corporate offices," "Government offices," "Public utilities," and "Theaters." **Exhibit 2**

81. More specifically, the C-2 district bans churches and other religious organizations completely, whereas similarly situated uses such as as "Art studio," "Civic/cultural buildings," "Corporate offices," "Government offices," "Public utilities," and "Theaters" are permitted as of right. **Exhibit 2**.

82. Such unequal and disparate treatment bears no rational relationship to any legitimate government interest.

83. Therefore, the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

84. The Church is suffering and will continue to suffer irreparable harm for which there is no adequate remedy at law as a direct result of the Defendant's violation of the Church's rights under the Equal Protection Clause.

85. Furthermore, as a direct result of the Defendant's conduct, Plaintiff has suffered and is entitled to recover equitable relief.

## COUNT VI
### Violation of the Pennsylvania Religious Freedom Protection Act

86. Plaintiff restates the allegations in paragraphs 1 through 87 as if fully restated herein.

87. The Pennsylvania Religious Freedom Protection Act, found at 71 Pa. Stat. § 2404, prohibits the imposition of a substantial burden on a person's free exercise of religion, including any burden that results from a rule of general applicability.

88. At all relevant times, the Defendant was acting under the color of state law.

89. Defendant imposed a substantial burden on the Church by:

    a. Banning the Church from using the Property at issue for worship services;

    b. Banning churches from the C 2 zoning district where land is available for churches

90. Gathering together as one body of believers for weekly worship services is part of the Church's sincerely held religious beliefs and is fundamental to the Church's religion.

91. As described in paragraph 91 and throughout, the actions of Clarion significantly constrain the Church's ability to meet as one body of believers for weekly worship services.

92. The actions of Clarion, as described in paragraph 91 and throughout, deny the Church the reasonable opportunity to engage in weekly worship services as one body of believers.

93. The actions of Clarion are not the least restrictive means of furthering any compelling government interest.

94. Defendant's exercise of governmental authority, which has already substantially burdened the Church's religious freedom, is imminent.

95. Therefore, Clarion has violated the Pennsylvania Religious Freedom Protection Act.

96. As a direct result of the Borough of Clarion's actions, the Church will continue to suffer irreparable harm for which there is no adequate remedy, and is entitled to declaratory and injunctive relief.

**PRAYER FOR RELIEF**

Plaintiff Hope Rising Community Church respectfully requests a judgment against Defendant Municipality of Borough of Clarion on each and every count alleged herein as follows:

1. According to 28 USC § 2201, declare the decision by Borough of Clarion to ban the Hope Rising Church from using the Property at issue in the C 2 zoning district for worship services to violate the Religious Land Use and Institutionalized Persons Act and further declare that Plaintiff is permitted as of right to use the Property as a religious assembly and for all of its other intended and stated purposes;

2. According to 28 USC § 2202, Fed. R. Civ. Pro. 64, 42 USC § 1983, and 42 USC § 2000cc-4 permanently enjoin Defendant's enforcement of all portions of the Borough of Clarion Zoning Ordinance that treat religious assemblies and institutions on less than equal terms with nonreligious assemblies and institutions and further enjoin Defendant from preventing the Church from using the Property for worship services;

3. According to 28 USC § 2202, Fed. R. Civ. Pro. 65, 42 USC § 1983, and 42 USC § 1988, 42 USC § 2000cc-4 award Plaintiff all necessary and appropriate equitable relief;

4. Grant such other and further injunctive relief the Court deems equitable, just, and proper.

## Verification

I, Pastor Harry Hoff, declare that I have personal knowledge of matters contained in paragraphs 1, 7, and 32 of this Verified Complaint and that the allegations contained therein are true and accurate. Executed this 1st day of November 2024

**Hope Rising Community Church**

By: 

Its: Senior Pastor

11/01/2024 @ 15:26 UTC

17

Respectfully submitted,

**Dalton & Tomich, PLC**

*/s/ Daniel P. Dalton*
*Pro Hac Vice application pending*
Daniel P. Dalton, Mich Bar No P 44056
ddalton@daltontomich.com

*/s/ Joshua A. Davey*
*Pro Hac Vice application pending:*
Joshua A. Davey, Mich Bar No P 87385
jdavey@daltontomich.com

Dalton &Tomich PLC
The Chrysler House
719 Griswold Street, Suite 270
Detroit, MI  48226
Tel. (313) 859-6000
Fax. (313) 859-8888
ddalton@daltontomich.com